YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
DAVID T. OKANO (SB# 278485)
davidokano@paulhastings.com
ALEXANDER H. LEE (SB# 303223)
alexanderlee@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

Attorneys for Defendants
GREE, Inc., GREE International
Entertainment, Inc., and Funzio Games, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUPERCELL OY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREE, INC., GREE INTERNATIONAL ENTERTAINMENT, INC., AND FUNZIO GAMES, INC.,<br><br>　　　　Defendants. | CASE NO. 4:17-cv-5556-YGR<br><br>**GREE'S SUPPLEMENTAL BRIEF ON THE BERKHEIMER CASE[1]** |

---

[1] GREE submits this brief in response to the Court's request for supplemental briefing on *Berkheimer*. Dkt. 41.

Patent eligibility under 35 U.S.C. § 101 is ultimately a legal question, and one that, as a general matter, the Federal Circuit has found to be appropriate for adjudication on the pleadings. By its express language, *Berkheimer* does not seek to disturb this general precept. Instead, it merely identifies certain circumstances where resolution of a Rule 12(b)(6) § 101 challenge may not be proper due to the nature of the patents at issue and evidentiary record. Such circumstances are not present here—if anything, the opposite. In *Berkheimer*, the specification described a claim limitation as unconventional and the defendant offered no evidence to contradict the intrinsic record. Here, the properly considered record describes the claims as conventional and the *plaintiff* has offered no evidence or concrete allegations to contradict that record.

I.   ***BERKHEIMER* DOES NOT DISRUPT THE EXISTING § 101 FRAMEWORK**

"Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases." So states Judge Moore's opinion in *Berkheimer v. HP Inc.*, 2018 WL 774096, at *6 (Fed. Cir. Feb. 8, 2018). In *Berkheimer*, the Federal Circuit affirmed a district court's grant of summary judgment that four claims of the asserted patent were invalid under § 101, and vacated and remanded the district court's similar determination for three claims, holding that "given the fact questions created by the specification's disclosure," for those claims "[w]e only decide that **on this record** summary judgment was improper." *Id.* at *8 (emphasis added).

The *Berkheimer* patent specification "describe[d] an inventive feature that stores parsed data in a purportedly unconventional manner" and that this "improvement increase[d] efficiency and computer functionality over the prior art." *Id.* at *6. The specification was the *only* relevant evidence in the record—the defendant "HP offered **no evidence**" to support the district court's determination. *Id.* (emphasis added). In view of this complete absence of evidence, Judge Moore concluded "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* She then analyzed the claims, finding the alleged improvements ("eliminating redundancy of stored object structures" and "effecting a one-to-many change of linked documents") were recited in claims 4–7, but not claims 1–3 and 9. *Id.* at *7. Thus, unlike

for claims 1–3 and 9, Judge Moore concluded a "genuine issue of material fact" remained as to whether claims 4–7 recited "well-understood, routine, and conventional activities." *Id.*

In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2018 WL 843288 (Fed. Cir. Feb. 14, 2018), Judge Moore again held that a § 101 determination on the pleadings cannot contradict the record. She noted: "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on the record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *Id.* at *2. The *Aatrix* complaint and patent specification described a claimed "data file" that "imports data from third-party applications into a viewable electronic form without programming each form file" as "contain[ing] an inventive concept directed to improved importation of data and interoperability with . . . software." *Id.* at *5.

The *Aatrix* district court "supplied **no reasoning or evidence**" for its finding "the claimed data file describes a 'well understood' and 'routine' component and function of a computer," and "nor [wa]s there any [such evidence] in the record." *Id.* at *6 (emphasis added). Moreover, the defendant "conceded that nothing in the specification describes [the claimed] importation of data as conventional." *Id.* at *5. In view of this, the *Aatrix* majority held that whether the claims recited an inventive concept "cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and the materials subject to judicial notice," and that the defendant had offered "no proper basis for rejecting . . . as a factual matter," certain "concrete allegations" targeting the recited improvement. *Id.*

Highlighting the patent-, claim-, and case-specific nature of the *Berkheimer* and *Aatrix* opinions, shortly after they issued, Judge Moore joined an opinion *affirming* in full a district court's Rule 12(b)(6) determination of patent-ineligibility on the pleadings, finding no concrete allegations of § 101 eligibility in the pleadings specifically tied to the claims and that the "specification indicate[d] that the components of the claimed invention [we]re conventional." *Automated Tracking Sols., LLC v. The Coca-Cola Co.*, No. 2017-1494, 2018 WL 935455, at *5 (Fed. Cir. Feb. 16, 2018).[2] Thus, while any Federal Circuit finding of patent-eligibility tends to

---

[2] *See also Integ. Tech. Sys. v. First Internet Bank*, 2017-1795 (Fed. Cir. Feb. 20, 2018) (Rule 36 affirmance of Rule 12(b)(6) § 101 dismissal in 2017 WL 631195 (E.D. Tex. Jan. 30, 2017)).

garner attention, *Berkheimer* does not signal a sea-change in the law: § 101 eligibility may still be resolved on the pleadings, courts may still rely on evidence such as the specification and other materials subject to judicial notice, and the § 101 inquiry still begins and ends with the claims.[3]

*Berkheimer*/*Aatrix* exhibit the centrality of the claims to a § 101 inquiry on the pleadings. All evidence must be filtered through the lens of the claims, as illustrated by the determination in *Berkheimer* that some claims were patent-ineligible as a matter of law and that resolution of the § 101 inquiry for other claims was inappropriate on the pleadings. 2018 WL 774096, at *7. In other words, the specification's disclosure of the purportedly unconventional could not create a genuine issue of material fact sufficient to defeat a Rule 12(b)(6) motion if those purported improvements were not "captured in the claims." Thus, courts must focus on the claims to determine whether a purported factual dispute is "genuine." *See Aatrix*, 2018 WL 843288, at *5 ("We have been shown no proper basis for rejecting [patentee's] allegations as a factual matter.").

## II.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT ON THIS RECORD

Like *Automated Tracking*, there are no *genuine* disputed issues of material fact here relevant to the § 101 determination. As shown in GREE's briefing, the specification and intrinsic evidence demonstrate that the claims recite only conventional components in a particular technological environment ('449 patent) or the automation of a known process ('520 patent).

The '449 patent claims the conventional process of single sign-on authentication in the environment of IM clients and online games. *See, e.g.*, Dkt. 42-1 at 36. The specification admits representative claim 1 (Supercell agrees, Opp'n, 7:23) adds nothing to the "conventional procedure" other than known function plug-ins. *See* '449 patent, 1:20–2:30, Figs. 1, 3; Mot., 5; Dkt. 42-1 at 23. But the patentee admitted during prosecution "plug-ins" were known and prior art disclosed "the function plug-in of claim 1." Reply, 2:21–3:2; Opp'n, Ex. A, 9–11.[4] Supercell

---

[3] GREE also notes the Supreme Court vacated *Ultramercial, Inc. v. Hulu LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), where the Federal Circuit reversed a § 101 dismissal on the pleadings, stating: "Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule." On remand, the Federal Circuit changed course, explaining only it "review[ed] questions concerning patent-eligible subject matter under 35 U.S.C. § 101 without deference," and affirmed the Rule 12(b)(6) grant of ineligibility. *Ultramercial*, 772 F.3d 709, 713, 717 (Fed. Cir. 2014).

[4] Dicta in *Berkheimer*, 2018 WL 774096, at *6, states that the "mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and

1  ignored all but the "function plug-in" in its opposition, contending only that plug-ins had not been
2  applied in the technological environment of IM and online games, not that the plug-in itself was
3  unconventional. *See* Opp'n, 18:20–21 (arguing only plug-ins had not been applied "between two
4  peer entities, i.e., two clients of the same user"); Reply, 3:3–21. Supercell did not offer anything
5  more than unsupported attorney argument—contradicted by the specification, *see* Reply, 7:7–
6  21—that the ordered combination recites an inventive concept, or separately argue that any
7  dependent claim recites something unconventional. *See* Mot., 5:24–6:5; Dkt. 42-1 at 40.

     Nor does Supercell's complaint provide any "concrete allegations" that representative claim 1 recites the unconventional or an improvement in computer functionality. *See* Compl. ¶¶ 21–23. For example, Supercell does not allege function plug-ins were inventive, *id.* ¶ 23, and even concedes single sign-on authentication was known, *id.* ¶ 22 ("In earlier Internet applications, the game client would obtain the logon information such as a user account from the IM client by way of an inter-process communication."). To the extent the complaint suggests any purported benefits like "not [being] necessary to make any change to the existing IM client" or "obtain[ing] the logon information easily, flexibly, and conveniently," *id.* ¶ 23, these purported benefits are not found in claim 1, which recites only a generic "function plug-in," and functional limitations of "obtaining," "sending," and "receiving." *See* Reply, 7:7–21; Dkt. 42-1 at 26, 31.

     The '520 patent claims the conventional process of upgrading a software application using packages. *See, e.g.*, Dkt. 42-1 at 42. The specification admits that representative claim 1 (Supercell agrees, Opp'n, 10:5) merely recites the creation of conventional software upgrade files by automating "widely used" "increment upgrade solutions" to "reduce [the] workload of the [software] developer" from "provid[ing] a lot of patch packages corresponding to different customized information portions." '520 patent, 1:27–29, 1:55–61; Mot., 19:4–13, 20:22–21:8, 23:24–24:4; Dkt. 42-1 at 52, 57. Although Supercell contends claim 1 recites a "novel combination," this is contradicted by the specification, which describes the claimed file as having the same structure and content ('520 patent, 1:42–62) as that created by the "widely used"

---

conventional" to "a skilled artisan at the time of the patent." Such concerns are not present here given the patentee's own admissions in the prosecution history.

Case No. 4:17-cv-5556-YGR      - 4 -      GREE'S SUPPLEMENTAL BRIEF ON *BERKHEIMER*

method. *See* Reply, 8:19–10:10; Dkt. 42-1 at 53–54. Instead, claim 1 recites the functional "obtaining," "generating," "removing," and "adding," generic terms that do not capture any specific technical detail. Reply, 10:19–11:2; Dkt. 42-1 at 58; *see Automated Tracking*, 2018 WL 935455, at *4 (rejecting plaintiff's "portrayal of the breadth of the representative claims" and determining "[t]he representative claims simply do not require a particular configuration or arrangement of [the claimed components]'). For the dependent claims, Supercell argues only they "recite further specified steps" or "a specific technological solution." *See* Opp'n, 21:12–17, 24:5–10. The specification does not describe anything recited by a dependent claim as unconventional, and claims identified by Supercell recite only known "md5" hash algorithms (claim 3) the Federal Circuit has found insufficient to provide an inventive concept, Reply, 13:8–21, the use of known "zip" or "apk" file types (claim 6), '520 patent, 4:18–46, or the age-old concept of performing a step of the method in smaller pieces instead of all at once with conventional computer components (claim 8), '520 patent, 9:17–21, Reply, 13:21–14:3. *See also* Dkt. 42-1 at 62.

Nor does Supercell's bare-bones complaint provide any "concrete allegations" that representative claim 1 recites the unconventional or an improvement in computer functionality. *See* Compl. ¶¶ 25–26. For example, Supercell alleges only that the '520 patent "relates to mobile communication technologies" and "provides a method and apparatus for upgrading an application." *Id.* ¶ 26. And Supercell effectively concedes the patent does no more than to automate an existing process by helping to "avoid providing too many patch packages for the same version of [an] application available on multiple release channels." *Id.*

On this record and these patents, *Berkheimer* is inapplicable. Mere attorney argument by Supercell cannot manufacture a dispute as to any genuine issue of material fact in the face of the claims, specification, and properly considered intrinsic evidence.[5] As demonstrated in GREE's briefs and hearing presentation, Supercell's patents are ineligible under § 101 as a matter of law.

---

[5] GREE objects to any attempt by Supercell to go beyond the Court's limited request for briefing on *Berkheimer*, such as to introduce purported facts or evidence to which GREE does not have the opportunity to respond. Supercell had a full opportunity in its opposition brief and during the hearing to present its strongest arguments. GREE submits that anything Supercell chose not to raise with its opportunities to do so is not only waived, but in violation of Civil Local Rule 7-3(d).

| | | |
|---|---|---|
| 1 | DATED: February 20, 2018 | PAUL HASTINGS LLP<br>By: */s/ Yar R. Chaikovsky* |
| 2 | | Yar R. Chaikovsky |
| 3 | | Attorneys for Defendants |
| 4 | | GREE, Inc., GREE International Entertainment, Inc., and Funzio Games, Inc. |