1 | MICHAEL J. SACKSTEDER (CSB No. 191605)
msacksteder@fenwick.com
2 | BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
3 | LAUREN E. WHITTEMORE (CSB No. 255432)
lwhittemore@fenwick.com
4 | FENWICK & WEST LLP
555 California Street, 12th Floor
5 | San Francisco, CA 94104
Telephone: 415.875.2300
6 | Facsimile: 415.281.1350

7 | GEOFFREY MILLER (CSB No. 308676)
gmiller@fenwick.com
8 | FENWICK & WEST LLP
Silicon Valley Center
9 | 801 California Street
Mountain View, CA 94041
10 | Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Plaintiff
SUPERCELL OY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUPERCELL OY,<br><br>Plaintiff,<br><br>v.<br><br>GREE, INC., GREE INTERNATIONAL ENTERTAINMENT, INC., and FUNZIO GAMES, INC.,<br><br>Defendants. | Case No. 4:17-cv-5556-YGR<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

On February 8, 2018 the Federal Circuit overturned a district court grant of summary judgment in *Berkheimer v. HP Inc.*, Case No. 2017-1437 (Fed. Cir. Feb. 8, 2018).  In its decision, the Federal Circuit provided new guidance on the burden of proof required of a defendant seeking to invalidate a patent under 35 U.S.C. § 101.  This guidance confirms that the Supercell's two asserted patents, U.S Patent Nos. 9,106,449 ("the '449 patent") (Dkt. No. 1-1) and 9,104,520 ("the '520 patent") (Dkt. No. 1-2) satisfy the Supreme Court's two-part *Alice* test.  It also highlights GREE's failure to satisfy its burden with respect to the second step of *Alice*.

In *Berkheimer*, the Federal Circuit vacated-in-part and affirmed-in-part summary judgment that certain claims of U.S. Patent No. 7,447,713 were invalid under § 101.  Using the two-step *Alice* test, the court held that the appealed claims were directed to the abstract idea of "parsing and comparing data." Slip op. at 9-11.  However, under the second step of *Alice*, the court set forth two important holdings.  First, it held that although the question of eligibility is "ultimately a question of law," the questions of fact underlying the *Alice* step-two inquiry must be resolved by clear and convincing evidence prior to reaching the final legal determination:

> The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.  Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.

*Id.* at 12; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, Case No. 2017-1452 (Fed. Cir. Feb. 14, 2018).  Second, the Federal Circuit held that "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer,* slip op. at 14.

The court then applied this framework to the asserted '713 patent.  First, it noted the specification discussed problems in the state of the art at the time the patent was filed and explained how the claimed invention constituted an improvement over the prior art. *Id.* at 14-15. The specification asserted that prior art systems resulted in redundancies, while the claimed invention's "one-to-many editing capability" resolved the problem redundancies and reduced storage requirements. *Id.* at 14.  The court then found that the asserted improvements, "to the

extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* at 15.

The court therefore vacated the district court's finding of ineligibility for claims 4-7 because the claims contain limitations directed to the inventive concept. *Id.* at 16. In particular, the court found that the claims recited "storing a reconciled object structure in the archive without substantial redundancy" and "effect[ing] a one-to-many change," both of which corresponded to the improvement over the prior art disclosed in the specification. *Id.* at 16-17. However, the court found that claims 1-3 and 9 did not include limitations that incorporate the elimination of redundancies of stored object structures and were therefore not patent-eligible. *Id.* at 16.

## I.   LEGAL STANDARD: *ALICE* STEP TWO

Under *Berkheimer* the second step of the *Alice* test remains the same, but the burden of proof required of Defendants has been clarified. The second step of *Alice* requires examining "the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014) (quotation omitted). A patent satisfies the second step when the claim limitations involve more than "well-understood, routine, [and] conventional activities previously known to the industry." *Alice*, 134 S. Ct. at 2359. "The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations" and "requires more than recognizing that each claim element, by itself, was known in the art." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-1350 (Fed. Cir. 2016). *Berkheimer* clarifies that the party asserting the defense of patent ineligible subject matter bears the burden of proving by clear and convincing evidence that the claim limitations or combination of limitations are well-understood, routine and conventional, and that merely noting that an element was known in the prior art is insufficient. Slip op. at 12, 14.

## II.   ARGUMENT

### A.  The '449 Patent Claims an Inventive Concept

Supercell's '449 patent claims an inventive concept. As in *Berkheimer*, the '449 patent specification describes a problem that existed in the prior art and explains how the claimed

invention resolves that problem. *See Berkheimer*, slip op. at 14. The '449 patent relates to logon technology for value-added service client based on IM client software. Under conventional logon methods, direct, pre-configured communication was required between the IM client and game client. '449 patent, 2:18-24. The game client could not be updated without also updating the IM client, which restricted the ability of online games to develop and the ability to expand the use of IM clients. *Id.* at 2:24-31. The '449 patent describes an inventive solution to the problem in the conventional logon systems. By placing a function plug-in between the game client and IM client, each of the peer client entities can be updated independently. *Id.* at 5:16-25.

As in *Berkheimer*, the specific improvement over the prior art detailed in the '449 specification is captured in the claims. *See* slip op. at 15. Independent claims 1 and 7 recite the specific ordered combination of steps required to effect this solution, placing a function plug-in between the peer client entities. In both claims, the function plug-in: (1) receives a request for logon information from a value-added client; (2) sends the request for the information to an IM client corresponding to the game client; (3) receives the information from the IM client; and (4) sends the information to the game client. '449 patent, 7:14-34, 8:8-26; *see also* Fig. 3.

### B. GREE has failed to prove the asserted claim limitations or combination of limitations of the '449 patent are well-understood, routine, and conventional

GREE has failed to prove by clear and convincing evidence that the claim limitations, when considered individually or as an ordered combination, are well-understood, routine, and conventional to a skilled artisan. The Federal Circuit expressly stated, "[t]he mere fact that something is disclosed in the prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, slip op. at 14. But this insufficient analysis is precisely what GREE provides in its motion. *See* Dkt. No. 26 at 13-16 ("Motion"). In particular, GREE has failed to show that the placement of the function plug-in between the IM client and the game client is routine or conventional. Instead, GREE points only to a generic "plug-in architecture." *Id.* at 14-15. It fails to consider the non-conventional advantages of the particular configuration disclosed and claimed in the '449 patent, which permits the flexible development of game clients and expanded application of IM clients, or the disparagement of and improvements over prior art

disclosed in the specification and file history. *See, e.g.*, '449 patent, 3:35-54; Dkt. No. 32-1, '449 File History, 7-8; *cf. Berkheimer*, slip op. at 14 (noting improvement over prior art).

In fact, GREE has failed to put forward any evidence that the ordered combination of claim elements is well-understood, routine, and conventional. In its motion, GREE devotes only a single paragraph – in which it make <u>no</u> mention of the function plug-in or its placement in the claimed configuration – to proving that the ordered combination of claim elements is conventional. Motion at 17. In its reply, GREE concedes that the placement of the function plug-in is unconventional. Dkt. No. 35 ("Second, <u>outside the 'function plug-in</u>,' the claimed order of interactions follows the 'conventional procedure.'" (emphasis added)). Thus, GREE has failed to carry its heavy burden with respect to *Alice* step two.

### A. The '520 Patent Claims an Inventive Concept

The '520 patent recites a method and apparatus for creating and installing a new installation package for mobile software applications. Like the *Berkheimer* patent, its specification details a problem that existed in the prior art and describes how the claimed invention improves the technology and resolves that problem. *See Berkheimer*, slip op. at 14. The '520 specification explains that prior art processes of creating patch package updates required creating a unique patch for each installation package across as many as one hundred release channels. '520 patent, 1:50-56. The '520 patent recites a method that enables developers to create a single patch that can be applied across all release channels by: (1) obtaining a patch package, (2) removing a customized information portion from the current installation package and obtaining a data portion of the package; (3) generating a data portion of a new installation package according to the patch package and the data portion of the current installation package; (4) obtaining the new installation package by adding the customized information portion to the data portion of the new installation package; and (5) installing the new package. *Id.* at 2:43-3:7. Further, as described in the specification, the fourth step above is performed in a manner that makes the customized information portion transparent during signature verification, in order to avoid failure of the signature verification of the new installation package. *Id.* at 4:14-46.

As in *Berkheimer*, the solution to the described problem and improvement over prior

methods are captured in the asserted claims. Independent claims 1, 9, 10, 17, and 18 recite the specific ordered combination required to effect the solution described in the specification, reciting a specific series of steps which allows for the client terminal to obtain a new installation package that has a data portion *different* from the current installation package and a customized information portion that is the *same* as the current installation package, thus allowing a developer is able to create a single patch package that will be able to update any prior installation package. '520 patent, 2:66-3:7, 3:52-59, 8:3-11, 8:48-56, 9:65-10:8. The dependent claims also capture this improvement by reciting specific, non-conventional variants of the independent claim. For example, claim 3 recites how the technical solution is applied when the information in the patch and installation packages comprises md5 values; claims 6, 14, 19, and 20 recite a specific variant in which the customized information is comprised in the comments of a zip file or the portion of an APK file so that the customized information portions is transparent during signature verification; and claim 8 recites generating the data portion by recording and combining preset lengths of the data portion into and from a memory.

### B. GREE has failed to prove the asserted claim limitations or combination of limitations of the '520 patent are well-understood, routine, and conventional

GREE has failed to prove by clear and convincing evidence that the claim limitations are well-understood, routine, and conventional. In particular, claim 1 of the '520 patent recites "obtaining the new installation package by adding the customized information portion to the data portion of the new installation package." *Id.* GREE merely points to a disclosure in which "application information" can be added to a "template executable" to form "an application executable for the software application." Motion at 23. Nowhere does GREE cite a disclosure in which a "data portion of the new installation package" is generated according to a patch package and data portion of a *previous installation package*. *See* Dkt. No. 32-2, '520 File History, 11.

Further, GREE has failed to put forward any evidence that the ordered combination of claim elements is well-understood, routine, and conventional. GREE devotes only a single paragraph to proving that the ordered combination of claim elements is conventional, comprising the conclusory argument that the combination of the claims is "logically required." Motion at 24.

1  Dated: February 20, 2018            Respectfully submitted,

2                                      FENWICK & WEST LLP

4                                      By: */s/ Michael J. Sacksteder*
                                           Michael J. Sacksteder
5                                          Attorneys for Plaintiff Supercell Oy